Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| Transporte Sonnell, LLC<br><br>*Recurrido*<br><br>v.<br><br>Autoridad de Carreteras y Transportación de Puerto Rico<br><br>*Peticionaria* | TA2026CE00529 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2025CV11183<br><br>Sobre: Ley de Transparencia y Procedimiento Expedito para Acceso a la Información Pública (Ley Núm. 141-2019) |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 5 de junio de 2026.

Comparece ante nos la Autoridad de Carreteras y Transportación de Puerto Rico (ACT o peticionaria) mediante recurso de *Certiorari* y solicita que revoquemos la *Resolución Interlocutoria*[1] emitida y notificada el 30 de marzo de 2026, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro recurrido). Mediante el referido dictamen, el TPI declaró *No Ha Lugar* la *Reconsideración*[2] presentada por la peticionaria, referente a una *Resolución Interlocutoria*[3] en la cual se declaró *No Ha Lugar* el cobro del cargo de reproducción de documentos bajo la Ley Núm. 141-2009, *infra*, y ordenó la entrega de los documentos solicitados libre de costos.

---

[1] Apéndice 28 del recurso de *Certiorari*.
[2] Apéndice 27 del recurso de *Certiorari*.
[3] Apéndice 24 del recurso de *Certiorari*.

Por los fundamentos que expondremos a continuación, **expedimos** el recurso de epígrafe y **revocamos** la *Resolución Interlocutoria* recurrida.

**I.**

El caso de autos tuvo su origen el 16 de diciembre de 2025, cuando Transporte Sonnell LLC (Sonnell o recurrido) presentó un *Recurso Especial de Revisión Judicial para el Acceso a la Información Pública al Amparo de la Ley 141-2019, según enmendada*[4]. En éste, Sonnell alegó que la ACT había incumplido con su deber de producir la totalidad de la información solicitada.

Por su parte, tras solicitar una prórroga[5], el 23 de enero de 2026, la peticionaria sometió su *Alegación Responsiva y Solicitud de Desestimación*[6]. Allí alegó que había cumplido con su deber de producir la información pública disponible conforme a los términos dispuestos por la Ley Núm. 141-2009, *infra*, y que puso expresamente a disposición de los abogados del recurrido los expedientes para su inspección, sin recibir respuesta alguna. Asimismo, estableció que la solicitud de información de Sonnell era excesiva, indiscriminada y que no cumplía con los requisitos de claridad, especificidad y delimitación razonable exigidos por el Artículo 4 de la Ley Núm. 141-2019[7]. Como parte de su evidencia, la ACT incluyó copia de los correos electrónicos, confirmación de envío y comunicación con objeciones[8].

Ese mismo día, el foro recurrido le ordenó a Sonnell que presentara su réplica[9]. En cumplimiento con lo anterior, el 26 de enero de 2026, el recurrido sometió su *Réplica a Alegación Responsiva y Solicitud de Desestimación presentada por la parte*

---

[4] Apéndice 1 del recurso de *Certiorari*.
[5] Véase, Apéndices 3 y 4 del recurso de *Certiorari*.
[6] Apéndice 6 del recurso de *Certiorari*.
[7] 3 LPRA sec. 9914.
[8] *Íd., Anejos A y B.*
[9] Apéndice 7 del recurso de *Certiorari, Orden.*

*recurrida*[10]. En la misma, arguyó que la información producida por la ACT era alegadamente fragmentada e insuficiente. Además, sostuvo que la peticionaria no había evidenciado el envío ni la recepción de la comunicación con fecha del 12 de diciembre de 2025, sometida como Anejo B. Por su lado, al día siguiente, la ACT presentó una *Moción Suplementaria*[11] en la cual sometió evidencia adicional para acreditar la comunicación del 12 de diciembre de 2025[12].

El 28 de enero de 2026, Sonnell instó una *Réplica a Moción Suplementaria Presentada por la Parte Recurrida*[13]. Allí insistió en que la referida comunicación no había sido recibida y que la evidencia de su envío le resultaba contradictoria. Luego de una dúplica presentada por la peticionaria[14], el 29 de enero de 2026, el TPI emitió y notificó una *Orden*[15] en la cual informó que el caso aún no se consideraba sometido. Así pues, señaló una vista argumentativa y transaccional para el 5 de febrero de 2026.

Llegado el día de la vista, la misma se celebró y, según surge de la *Minuta*[16] y de la *Resolución*[17] emitida y notificada el 5 de febrero de 2026, las partes informaron que habían alcanzado un acuerdo y que el recurrido haría entrega de los documentos solicitados en el término de quince (15) días laborables.

No obstante, el 26 de febrero de 2026, la ACT presentó una *Moción de Prórroga para Cumplir con Orden e Informando Costo de Reproducción de Documentos*[18], mediante la cual notificó al TPI que había iniciado el proceso de recopilación, revisión y reproducción de los expedientes objeto del acuerdo, los cuales constaban de

---

[10] Apéndice 8 del recurso de *Certiorari*.
[11] Apéndice 10 del recurso de *Certiorari*.
[12] *Íd., Anejo 1.*
[13] Apéndice 12 del recurso de *Certiorari*.
[14] Apéndice 14 del recurso de *Certiorari*, *Dúplica a "Réplica a Moción Suplementaria Presentada por la Parte Recurrida".*
[15] Apéndice 15 del recurso de *Certiorari*.
[16] Apéndice 20 del recurso de *Certiorari*.
[17] Apéndice 19 del recurso de *Certiorari*.
[18] Apéndice 21 del recurso de *Certiorari*.

múltiples cajas físicas con un volumen considerable de documentos acumulados durante varios años. Asimismo, adujo que la magnitud y complejidad del material requerían un proceso minucioso de identificación, clasificación y verificación, lo que hacía materialmente imposible completar la entrega dentro del término originalmente acordado. Por ello, solicitó una prórroga de quince (15) días laborables adicionales para cumplir con la entrega. En cuanto al costo de reproducción, arguyó que el Reglamento Núm. 09-007, *infra,* establecía que el costo por reproducción de documentos era de treinta centavos ($0.30) por página, cantidad que constituía un costo directo y razonable conforme a la Ley Núm. 141-2019, *infra.* Por tanto, solicitó que previo a la entrega de los documentos reproducidos digitalmente, el recurrido debía sufragar el costo correspondiente al total de páginas a ser reproducidas.

Evaluada tal solicitud, el 27 de febrero de 2026, el foro recurrido emitió y notificó una *Orden*[19] en la cual declaró *Ha Lugar* la prórroga solicitada. Sin embargo, en cuanto a condicionar la entrega de los documentos al pago de los costos de reproducción, dispuso que Sonnell expusiera su posición al respecto. En cumplimiento con lo anterior, ese mismo día, el recurrido sometió una *Oposición a Moción de Prórroga para Cumplir con Orden e Informando Costo de Reproducción de Documentos Presentada por la ACT*[20], mediante la cual cuestionó la facultad de la ACT para cobrar por la reproducción de los documentos solicitados. En síntesis, alegó que conforme a la Ley Núm. 141- 2019, *infra,* el acceso a la información pública era gratuito como regla general y que solo podían imponerse cargos limitados a costos directos de reproducción razonables. Asimismo, sostuvo que la peticionaria no podía fundamentar dicho cobro en el Reglamento Núm. 09-007,

---

[19] Apéndice 22 del recurso de *Certiorari.*
[20] Apéndice 23 del recurso de *Certiorari.*

*infra,* por tratarse de una normativa anterior a la Ley Núm. 141-2019, *infra,* que no había sido atemperada a sus disposiciones. De igual forma, argumentó que dicho reglamento no contemplaba el cobro por reproducción en formato digital, por lo que no resultaba aplicable al presente caso.

Analizadas las posiciones de las partes, el 12 de marzo de 2026, el TPI emitió y notificó una *Resolución Interlocutoria* en la cual dictaminó lo siguiente:

> No existiendo un reglamento aprobado u orden administrativa a tenor con el mandato claro del Artículo 8 de la Ley 141-2019, la ACT no puede utilizar el antiguo Reglamento 09-007, para fijar los costos de reproducción.
>
> Por otro lado, la Ley 156 de 2025, enmendó, entre otros, el Art. 8 a los fines de incluir "[s]i la entrega de la información requerida implica un gasto extraordinario, la entidad gubernamental divulgará la misma en el formato disponible o de menor costo".
>
> Por lo tanto, en cuanto a condicionar la entrega de los documentos al pago de $0.30 por página, No Ha Lugar. Se ordena la entrega de los documentos solicitados libre de costos[21].

Posteriormente, el 20 de marzo de 2026, ACT presentó una *Moción Informativa*[22] en la cual notificó al foro recurrido el cumplimiento con la *Resolución Interlocutoria* del 12 de marzo de 2026. **Allí informó que completó la recopilación, organización y reproducción digital de los documentos solicitados, los cuales fueron entregados a Sonnell mediante enlaces electrónicos**. De igual manera, hizo constar que la reproducción implicó el manejo de aproximadamente doscientos ocho (208) archivos que superaban las ocho mil setecientas (8,700) páginas, además de gestiones técnicas adicionales relacionadas con la búsqueda y digitalización de correos electrónicos. La peticionaria destacó que dicho proceso conllevó el uso de recursos públicos, y expresó que el cumplimiento con la orden de entrega libre de costo no constituía una renuncia a su derecho de solicitar reconsideración ni a cualquier otro remedio

---

[21] Apéndice 24 del recurso de *Certiorari.*
[22] Apéndice 25 del recurso de *Certiorari.*

disponible en derecho, reservándose expresamente sus defensas respecto a la improcedencia de la determinación sobre costos de reproducción.

Evaluado el escrito de la ACT, el 24 de marzo de 2026, el TPI se dio por enterado de lo informado y dispuso que, no obstante, procedía la entrega de la información según lo previamente ordenado[23]. Inconforme, el 27 de marzo de 2026, la peticionaria presentó una *Reconsideración* en la cual argumentó que la ley distinguía entre el acceso o inspección, el cual era gratuito, y la reproducción de documentos, la cual estaba expresamente sujeta al pago de derechos y cargos razonables. Asimismo, argumentó que el Reglamento 09-007, *infra*, permanecía vigente, gozaba de presunción de legalidad y no era incompatible con la ley, por lo que podía aplicarse para fijar costos de reproducción. De igual forma, enfatizó que la digitalización de documentos conllevaba el uso de recursos públicos, personal, tiempo y equipo, por lo que constituía un costo directo recuperable. La ACT también destacó que la reproducción en este caso implicó un volumen sustancial de información, ocho mil setecientas (8,700) páginas y aproximadamente doscientos ocho (208) archivos, sin incluir la búsqueda y reproducción de cientos de correos electrónicos, lo que configuraba un gasto extraordinario para la peticionaria. Así pues, solicitó que se dejara sin efecto la orden de entrega libre de costos y se reconociera la procedencia del cobro conforme a la ley y reglamentación aplicable.

Revisado el escrito, el 30 de marzo de 2026, el TPI emitió y notificó una *Resolución Interlocutoria*[24] en la cual declaró *No Ha Lugar* la reconsideración presentada por ACT. Insatisfecho, el 29 de

---

[23] Apéndice 26 del recurso de *Certiorari, Orden.*
[24] Apéndice 28 del recurso de *Certiorari.*

abril del 2026 la peticionaria acudió ante este foro intermedio y le imputó al foro recurrido el siguiente señalamiento de error:

> Erró y abusó de discreción el TPI al emitir una Resolución Interlocutoria declarando No Ha Lugar al cobro del cargo por reproducción de documentos y al Ordenar la entrega de los documentos solicitados libre de costos, sin considerar la aplicabilidad del Reglamento 09-007 de la ACT ni las disposiciones de la Ley Núm. 141-2009, según enmendada, las cuales autorizan expresamente la imposición de cargos razonables por concepto de reproducción de documentos públicos.

El 6 de mayo de 2026, emitimos y notificamos una *Resolución* en la cual le concedimos al recurrido diez (10) días para mostrar causa por la cual no se debía expedir el recurso presentado. En cumplimiento con lo anterior, el 11 de mayo de 2026, Sonnell sometió su *Oposición a Expedición de Petición de Certiorari*. Allí sostuvo que la Ley 141-2019, *supra*, le imponía a la ACT la obligación de establecer, mediante reglamento u orden administrativa, los cargos aplicables de manera prospectiva, conforme surgía del lenguaje imperativo del Artículo 8 la Ley 141-2019, *supra*, al disponer que dichos cargos "se establecerán". Sostuvo que dicha disposición constituía una condición indispensable para poder imponer cargos. Asimismo, añadió que la peticionaria produjo los documentos digitalmente, por ende, la evidencia solicitada era viable y estaba disponible.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

### -A-

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior[25]. La determinación de

---

[25] Véase, *Torres González v Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334-335 (2005); *Negrón v. Srio. de Justicia*, 154 DPR 79, 90-92 (2001).

expedir o denegar este tipo de recursos se encuentra enmarcada dentro de la discreción judicial[26]. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera"[27]. Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho"[28].

La Regla 40 del Reglamento del Tribunal de Apelaciones[29], establece los criterios que este foro debe tomar en consideración al entender o no en los méritos los asuntos planteados mediante un recurso de *certiorari.* La aludida regla dispone lo siguiente:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Un *certiorari* solo habrá de expedirse si al menos uno de estos criterios aconseja la revisión del dictamen recurrido. Es decir, el ordenamiento impone que ejerzamos nuestra discreción y evaluemos si, a la luz de alguno de los criterios contenidos en la misma, se requiere nuestra intervención.

En lo pertinente a este caso, el *certiorari* también es el recurso

---

[26] *Íd.*

[27] *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 729 (2014); *Negrón v. Srio. De Justicia,* 154 DPR 79, 91 (2001).

[28] *Íd.*

[29] 4 LPRA XXII-B, R. 40.

apropiado para solicitar la revisión de determinaciones postsentencia[30]. A esos efectos, el Tribunal Supremo expresó que:

> Las resoluciones atinentes a asuntos postsentencia no se encuentran comprendidas entre aquellas determinaciones de naturaleza interlocutoria categóricamente sujetas a escrutinio mediante el recurso de *certiorari*. De otra parte, por emitirse este tipo de decisión luego de dictada la sentencia, usualmente tampoco cualifica para el recurso de apelación provisto para dictámenes judiciales finales. Se corre el riesgo, por lo tanto, de que fallos erróneos nunca se vean sujetos a examen judicial simplemente porque ocurren en una etapa tardía en el proceso, tal como lo es la ejecución de sentencia[31].

**-B-**

En nuestro ordenamiento existe un derecho fundamental a la información pública[32]. Por ello, desde hace más de tres décadas nuestro Tribunal Supremo reconoció en *Soto v. Srio. de Justicia*, 112 DPR 477 (1982), el derecho de la prensa y de los ciudadanos en general a tener acceso a la información pública como un derecho fundamental de estirpe constitucional. Este derecho está firmemente ligado al ejercicio de los derechos de libertad de palabra, prensa y asociación formalmente consagrados en el Art. II, Sec. 4 de la Constitución de Puerto Rico, LPRA, Tomo 1.

En vista de la consistente jurisprudencia que reconocía al derecho de las personas al acceso de la información pública, fue aprobada la Ley 141-2019, conocida como la "*Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública*" (Ley 141-2019)[33]. Como lo indica su título, esta ley fue promulgada por la Asamblea Legislativa a los fines de promover el acceso a la información pública mediante mecanismos procesales ágiles y económicos que propicien la transparencia[34]. Surge de la Exposición de Motivos, además, que:

> [e]s importante que entre el gobierno y la ciudadanía exista un ambiente de respeto, transparencia y comunicación efectiva. Mantener el orden es importante y la transparencia

---

[30] *IG Builders et al. v. BBVAPR, supra*, pág. 339.
[31] *Íd.*
[32] *Trans Ad de P.R. v. Junta de Subastas*, 174 DPR 56 (2008).
[33] 3 LPRA sec. 9911 *et al.*
[34] Véase Exposición de Motivos, Ley 141-2019.

de un gobierno aún más; la ciudadanía tiene el derecho de saber cómo se manejan los fondos públicos y cómo se toman las decisiones que afectarán el futuro de Puerto Rico y sus habitantes.

Referente a la controversia que nos ocupa, el Artículo 8 de la Ley 141-2019[35] dispone que:

Como regla general, el derecho de acceso o de inspección de un documento público será permanente y gratuito. **La expedición de copias simples o certificadas, grabaciones y reproducciones estará sujeta al pago de derechos y cargos razonables**. **Los cargos correspondientes se establecerán por reglamento u orden administrativa. Se entenderá razonable el pago de los costos directos de reproducción, el costo de envío por correo regular y los derechos expresamente autorizados en ley**. **No obstante lo anterior, toda persona que demuestre indigencia según se regule por reglamento u orden administrativa, será eximida del pago de derechos o cargos por la solicitud de información.** En la Rama Ejecutiva, la Oficina del Secretario de Asuntos Públicos u oficina análoga establecerá unas guías uniformes para estas regulaciones administrativas que exijan el cumplimiento fiel de lo establecido en esta Ley, de igual forma podrá establecer el Código de conducta que regirá a los Oficiales de Información en el cumplimiento de sus funciones. En cuanto a la Rama Judicial y la Rama Legislativa, las mismas determinarán internamente cómo crearán las guías uniformes y el Código de conducta antes indicado.

Cuando la información solicitada no se encuentre disponible en el formato requerido por el solicitante, la entidad deberá notificarlo de manera expresa. Además, estará obligada a informar los formatos en los cuales la información efectivamente se encuentra disponible. Ninguna entidad podrá ser obligada a generar o elaborar un documento que no exista al momento de presentarse la solicitud**. Si la entrega de la información requerida implica un gasto extraordinario, la entidad gubernamental divulgará la misma en el formato disponible o de menor costo.** La entidad gubernamental establecerá la forma de acreditar la entrega efectiva de la información solicitada. (Énfasis nuestro).

En consonancia con lo anterior, el *"Reglamento Núm. 09-007 Cobro por la Obtención de Copias de Documentos Oficiales y Emisión de Certificaciones de la Autoridad de Carreteras y Transportación"*, Reglamento Núm. 7084 del 24 de enero de 2006 (Reglamento Núm. 09-007) se promulgó en virtud de las facultades conferidas por la Ley Núm. 74 del 23 de junio de 1965, según enmendada, conocida como *"Ley de la Autoridad de Carreteras y Transportación de Puerto Rico"* (Ley Núm. 74). La misma faculta a la Autoridad para adoptar,

---

[35] 3 LPRA sec. 9918.

proclamar, enmendar y derogar aquellas reglas y reglamentos que fueren necesarios para desempeñar sus poderes y deberes[36].

Ahora bien, el propósito de dicho reglamento es establecer las normas que regirán con relación al cobro por la obtención de copias simples y certificadas de documentos oficiales y por la emisión de certificaciones de la ACT[37]. El mismo provee una *Lista General de Documentos*[38] donde detalla el importe de las distintas copias a generar.

### III.

En apretada síntesis, la peticionaria adujo que el TPI incidió al declarar *No Ha Lugar* el cobro por reproducción de documentos y ordenar su entrega libre de costo, sin considerar la aplicabilidad del Reglamento 09-007, *supra*, de la ACT ni las disposiciones de la Ley Núm. 141-2009, *supra*, las cuales autorizan el cobro de cargos razonables por la reproducción de documentos públicos.

Por su parte, el recurrente arguyó que el Reglamento 09-007, *supra*, no contemplaba disposiciones específicas relacionadas con la reproducción digital de documentos ni establecía criterios para determinar los costos directos asociados a dicho formato. Además, sostuvo que el cargo de treinta centavos ($0.30) por página al que alude la ACT responde a la reproducción de documentos físicos, no a la digitalización o transmisión electrónica de información. De igual manera, indicó que la pretensión de extender la aplicación del reglamento a un escenario no contemplado en su texto, y además regido por una legislación posterior que imponía requisitos específicos, resultaba insostenible.

Ahora bien, como adelantamos en el tracto procesal, el TPI fundamentó su determinación en que el Artículo 8 de la Ley 141-

---

[36] Art. II del Reglamento Núm. 09-007.
[37] Art. IV del Reglamento Núm. 09-007.
[38] Véase, Anejo II del Reglamento Núm. 09-007.

2009, *supra*, introducido por la Ley 156-2025, disponía que, cuando la entrega de la información implicara un gasto extraordinario, la entidad gubernamental debía divulgarla en el formato disponible o de menor costo. Además, adujo que no existía un reglamento aprobado u orden administrativa a tenor con el mandato claro del Artículo 8 de la Ley 141-2019, *supra*, y, por ende, la ACT no podía utilizar el Reglamento 09-007, *supra*, para fijar los costos de reproducción. No le asiste la razón, veamos.

Según lo esbozado en la exposición del derecho, el Art. 8 de la Ley 141-2019, *supra*, establece que, si bien el acceso o inspección de documentos públicos es gratuito como regla general, "[l]a expedición de copias simples o certificadas, grabaciones y reproducciones estará sujeta al pago de derechos y cargos razonables". Es decir, dicha disposición no elimina el cobro de costos, sino que regula el modo de entrega para minimizar gastos.

Así pues, es menester puntualizar que el artículo no limita el cobro a copias físicas, sino que incluye tanto la expedición de copias como las reproducciones en sentido amplio. Tan es así, que el propio artículo define como "razonables" aquellos cargos que correspondan a los costos directos de reproducción, incluyendo los asociados al proceso necesario para producir la información solicitada y no limita al cobro únicamente de formatos físicos.

Por otra parte, el Art. 8 de la Ley 141-2019, *supra*, permite que la reproducción sea libre de costo únicamente en escenarios específicos, tales como: (1) el acceso mediante inspección de documentos públicos; (2) cuando la información ya está disponible de forma gratuita en medios electrónicos; y (3) en casos de indigencia debidamente acreditados. En el caso de marras, es evidente que ninguno de estos supuestos se configura. El recurrido no optó por inspeccionar los documentos, la información no se encontraba previamente disponible para acceso gratuito en formato

electrónico, y tampoco se alegó ni demostró indigencia. Además, cabe destacar que en el recurso presentado por la ACT se adujo que, durante las conversaciones transaccionales previas al acuerdo, ya se había informado a Sonnell que la reproducción de los documentos conllevaría un costo[39].

En cuanto a la determinación de que el Reglamento 09-007, *supra*, no era aplicable, colegimos que no le asiste la razón. Esto, debido a que dicho reglamento continúa vigente y es compatible con la Ley 141-2019, *supra*. El estatuto reconoce el derecho a cobrar gastos razonables por la reproducción de documentos públicos, mientras que, el reglamento establece el mecanismo para imponer dichos cargos a través de la *Lista General de Documentos,* la cual detalla el importe de las distintas copias a generar. Además, aun si concluyéramos que el Reglamento 09-007 no era de aplicabilidad, ello no justificaba en modo alguno ordenar la entrega libre de costos. Pues, como ya hemos enfatizado, la Ley Núm. 141-2019, *supra*, no autoriza la eliminación total de los costos de reproducción, por el contrario, exige que los mismos sean razonables y limitados a los costos directos. Apuntalamos que, *"[e]l Estado está obligado a manejar los fondos públicos con el mayor celo, amparado en los más altos principios éticos y fiduciarios*[40]*".* Lo anterior, nos lleva forzosamente a concluir que el TPI se excedió en el ejercicio de su discreción al no justipreciar el costo de la reproducción de los documentos.

## IV.

Por los fundamentos antes expuestos, ***expedimos*** el recurso de epígrafe y ***revocamos*** la *Resolución Interlocutoria* recurrida. Se devuelve el caso al foro de instancia para celebrar una vista para

---

[39] Véase, pág. 7 del recurso *Certiorari.*
[40] *Jaap Corp. v. Departamento de Estado et al.,* 187 DPR 730, 739 (2013).

determinar los costos razonables y el pago por la reproducción de los documentos solicitados.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


                              Lcda. Lilia M. Oquendo Solís
                        Secretaria del Tribunal de Apelaciones